UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6.16.16

ANGEL SUAREZ,

                              Petitioner,

     -v-                                              No. 13-cv-2981 (RJS)

UNITED STATES OF AMERICA,

                              Respondent.


UNITED STATES OF AMERICA

     -v-                                              No. 11-cr-839 (RJS)

ANGEL SUAREZ,

                              Defendant.              OPINION AND ORDER


RICHARD J. SULLIVAN, District Judge:

     Angel Suarez ("Petitioner"), proceeding *pro se*, brings this petition for the issuance of a

writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), challenging the sentence

imposed by the Court after Petitioner pleaded guilty to the use and possession of a firearm in

relation to and in furtherance of a drug trafficking crime in violation of Title 18, United States

Code, Sections 921(a)(6), 924(c)(1)(A)(i) and 924(c)(1)(B)(i).  For the reasons set forth below, the

Petition is denied.

I. BACKGROUND[1]

On September 8, 2011, an officer from the New York Police Department ("NYPD") "observed Angel Suarez walk from the second floor of the stairwell [in a building] holding a shotgun and a black plastic bag." (Doc. No. 19, Ex. A ("Pre-Sentence Report" or "PSR") at 4.) The police later determined that the shotgun was a Remington Model 870 and that the black plastic bag contained 90 small clear plastic bags filled with crack cocaine. (*Id.*) On December 22, 2011, the Grand Jury returned a two-count Superseding Indictment (Doc. No. 12 ("Indictment")), charging Petitioner with (1) the intentional and knowing distribution of, and possession with intent to distribute, a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and (2) the use and possession of a firearm in relation to and in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Sections 921(a)(6), 924(c)(1)(A)(i), and 924(c)(1)(B)(i).  On January 18, 2012, Petitioner reached an agreement with the government to plead guilty to Count Two of the Indictment.  (Doc. No. 17, Transcript of Proceedings, dated January 19, 2012 ("Plea Tr."), at 3:5-7.)  The following day, Petitioner, represented by counsel, appeared before this Court and pleaded guilty to Count Two.  (*Id.* 45:4-7.)

At the plea conference, Petitioner stated that he was not under the influence of drugs, a mental illness, or anything else that might prevent him from understanding the plea (*id*. 5:12-6:16), had read the Indictment and discussed it with his attorney (*id.* 2:22-25), had the opportunity to discuss his case with his attorney (*id.* 6:20-25), and was satisfied with his counsel's representation

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear on ECF in *United States v. Suarez*, No. 11-cr-839 (RJS).  However, the Court also cites materials that appear on ECF in Petitioner's civil case, *Suarez v. United States*, No. 13-cv-2981 (RJS), including the Petition (No. 13-cv-2981, Doc. No. 1 ("Pet.")).

(*id*. 7:5-7).[2]   The Court advised Petitioner of his rights both orally and in writing and made sure he understood them (*id.* 7:8-18:6), described the charges (*id*. 19:4-22:1), reviewed the range of penalties for Count Two, including the mandatory minimum sentence of ten years (*id*. 23:17-24:23), and explained that Petitioner could not receive anything less than the ten-year minimum sentence unless Petitioner cooperated with the government and the government made a motion for a reduced sentence as a result of Petitioner's substantial assistance in the investigation and prosecution of others (*id.* 23:17-33:4).  When asked by the Court to describe what he had done that made him guilty of the crime charged in Count Two, Petitioner admitted to being in the apartment with the shotgun, touching it on at least one occasion, knowing that the gun was there to protect a drug dealing business, and being involved in the crack distribution operation based within the apartment.  (*Id.* 37:23-39:14.)  Finally, after determining that Petitioner understood his rights and knowingly waived them, that his guilty plea was entered knowingly and voluntarily, and that the plea was supported by an independent basis in fact for each of the elements of the offenses charged in Count Two of the Indictment, the Court accepted Petitioner's guilty plea.  (*Id.* 45:22-46:5.)

On May 2, 2012, the Court sentenced Petitioner to a term of imprisonment of ten years – the mandatory minimum – on Count Two.  (Doc. No. 22, Transcript of Proceedings, dated May 2, 2012, at 20:14-15.)  Thereafter, the Court dismissed Count One of the Indictment.  (*Id.* 24:14-15.)  The Court also notified the Petitioner at sentencing that he had the right to appeal the sentence by filing a notice of appeal within fourteen days after the final judgment.  (*Id*. 24:15-24.)  Fed. R. App. P. 4.  The right to appeal expired on May 16, 2012, and Petitioner never filed a direct appeal.

---

[2] Petitioner's original counsel, Louis Fasulo, Esq., was replaced by Michael Kim, Esq., on December 20, 2011, before Petitioner was indicted on the Superseding Indictment.  All of Petitioner's claims in this Petition involve Mr. Kim's representation of Petitioner.

On April 29, 2013, Petitioner filed the instant Petition. In it, Petitioner claims that his counsel was ineffective for (1) "not competently representing Petitioner," (2) "not adequately advising him on the plea offer," (3) "abandoning his cause during the plea negotiating process," and (4) "not seeking a downward departure based on his mentally diminished capacity." (Pet. at 5.) Petitioner also alleges that his plea was "unintelligent, resulting in it being unknowingly and involuntarily entered." (*Id.* at 6.)

## II. LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and internal quotation marks omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI. When challenging the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an

4

objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690-91). Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

With respect to *Strickland*'s second prong, a petitioner who has pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 132 S. Ct. 1399,

1409 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial).   In the plea bargaining context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.  And as a general rule, "defense counsel has the duty to communicate formal [plea] offers from the prosecution." *Frye*, 132 S. Ct. at 1408 (finding prejudice where a defendant's counsel allowed a favorable plea offer to expire without advising the defendant that the offer had been made.)

Finally, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Any "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74.

### III. Discussion

#### A. Deficient Guilty Plea

A guilty plea is constitutionally valid only if it is done voluntarily, knowingly, and intelligently. *See e.g.*, *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  The validity of a guilty plea depends on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992).  Generally, a plea is "intelligent" if the accused had the advice of counsel and understood the consequences of his plea, even if only in a "fairly rudimentary way." *Miller v.*

*Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).  A plea is "voluntary" if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.  *Id.*

As an initial matter, Petitioner is procedurally barred from claiming that his guilty plea was not voluntary and intelligent because he did not raise this argument on direct appeal.  "In general, a defendant is barred from collaterally challenging a conviction under Section 2255 on a ground that he failed to raise on direct appeal."  *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011); *see also Yick Man Mui*, 614 F.3d at 53-54; *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993); *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992).  This includes claims that a guilty plea was not voluntary or intelligent.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  There are two exceptions to this form of procedural bar: if the defendant can show (1) "cause and actual prejudice," or (2) that he is "actually innocent."  *Id.* at 622 (citations omitted).  Thus, because Petitioner did not directly appeal the voluntariness and intelligence of his plea, he must show either "'cause' excusing the procedural default, and 'actual prejudice' resulting from the alleged error," *id.* at 630, or that he is "actually innocent" to proceed with this claim.  Here, Petitioner has not alleged, let alone shown, either.  Therefore, his claim that his plea was not voluntary or intelligent is procedurally defaulted.

Nevertheless, even if the Court were to consider the merits of Petitioner's claim, the conclusion would remain the same.  First, nothing in the Petition causes the Court to doubt that Petitioner was competent when he pleaded guilty to Count Two of the Indictment.  At the plea conference, the Court engaged in a detailed colloquy with Petitioner about the nature and consequences of his guilty plea.  (Plea Tr. at 7:8-18:6.)  The Court asked Petitioner a series of questions to determine his competence and explained to Petitioner his rights to ensure that he

understood the charges against him and the significance of the rights he was waiving.  (*Id*. 3:8-23:16.)  Petitioner stated that his mind was clear and affirmed that he had discussed the charges and any possible defenses with his attorney and that he was satisfied with his counsel's representation.  (*Id*. 5:12-7:7.)  Petitioner's statements at his plea conference indicate that he was advised by competent counsel, was in control of his mental faculties, and understood the nature of the charges against him.  Thus, the Court reaffirms its findings – made on the record at the plea conference (*id*. 45:22-46:5) – that Petitioner's plea was voluntary, knowing, and intelligent.  *See Brady v. United States*, 397 U.S. 742, 756 (1970).

## B.  Ineffective Assistance of Counsel

Petitioner also claims that his counsel was ineffective for (1) "not competently representing Petitioner," (2) "not adequately advising him on the plea offer," (3) "abandoning his cause during the plea negotiating process," and (4) "not seeking a downward departure based on his mentally diminished capacity."  (Pet. at 5.)  While Petitioner did not file a direct appeal, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under Section 2255, whether or not the petitioner could have raised the claim on direct appeal."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  The Court will assess the first three claims together, since all relate to counsel's conduct leading up to the guilty plea.

Although Petitioner now expresses dissatisfaction with his counsel, he has not shown that his counsel was constitutionally ineffective.  With respect to *Strickland*'s first prong, the Court finds that Petitioner's counsel's performance did not fall "below an objective standard of reasonableness" measured against "prevailing professional norms."  *Strickland*, 466 U.S. at 694.  An objective review of the record reveals that counsel achieved a highly advantageous result for his client.  Had Petitioner's case gone to trial, the government would have introduced (1) the

8

testimony of four NYPD officers who arrested Petitioner and observed him in possession of a firearm and a bag containing 90 small baggies of crack cocaine, (2) evidence that the bags possessed by Petitioner contained at least eight grams of crack cocaine, and (3) evidence that the firearm seized from Petitioner was a short-barreled shotgun. (Plea Tr. at 42:8-43:13.)   It is also undisputed that Petitioner obtained the significant benefit of the government agreeing not to pursue Count One, for drug possession, which under the Sentencing Guidelines would have added an additional 18 to 24 months to his prison term if he pleaded guilty (*id.* 44:12-20) and an additional 27 to 33 months if Defendant had insisted on going to trial.[3]   Moreover, Petitioner told the Court at his plea allocution that he had the opportunity to discuss his case and possible defenses with his lawyer (*id.* 6:20-7:4), and that he was satisfied with his lawyer's representation (*id.* 7:5-7).   Since Petitioner has not overcome the "strong presumption of verity" of his statements at the plea hearing that his lawyer discussed the case and possible defenses with him, *Blackledge*, 431 U.S. at 74, and the record indicates that counsel zealously advocated on Petitioner's behalf during plea negotiations with the government, the Court is satisfied that Petitioner's counsel competently represented him, adequately advised him on the plea offer, and did not "abandon his cause" during plea negotiations.

Nor has Petitioner demonstrated that he was prejudiced by any of his counsel's alleged deficiencies. *Strickland*, 466 U.S. at 694.   Although the Supreme Court recently found ineffective assistance of counsel in the plea bargaining context in *Lafler* and *Frye*, Petitioner does not allege his counsel's conduct was anywhere near the level of egregiousness found in those cases.   Unlike the defendant in *Lafler*, who was convicted at trial after rejecting multiple favorable plea deals upon bad advice from his counsel, or the defendant in *Frye*, whose counsel never even reported

---

[3] The longer range here reflects the fact that Petitioner would not have been entitled to a three-level reduction in his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, had he gone to trial.

the plea offer to him, Petitioner accepted a plea bargain that recommended the mandatory minimum sentence for Count Two of the Indictment, and the outright dismissal of the drug charges in Count One. *See Lafler*, 132 S. Ct. at 1391; *Frye*, 132 S. Ct. at 1408. Here, there is no evidence that Petitioner's counsel did not communicate plea bargain offers to Petitioner, nor does Petitioner allege that there was a reasonable probability that he would have insisted on going to trial if not for his counsel's insistence. *See Frye*, 132 S. Ct. at 1409; *see also Lafler*, 132 S. Ct. at 1391. Moreover, if Petitioner *had* gone to trial and been convicted of both counts, his guidelines range would have been 27 to 33 months for Count One, in addition to a mandatory minimum of 10 years for Count Two, which would have yielded a sentence significantly higher than the one he received.

Importantly, Petitioner offers no facts to suggest that a better plea deal was ever offered, or even contemplated, by the government; to the contrary,, he claims that his counsel was ineffective because he was aware of Petitioner's learning disability, difficult family background, prior homelessness, and difficulty in school, but did not use these facts to *try* and obtain a *more* favorable plea bargain. (Pet. at 5-5a.) However, the failure of a lawyer to obtain a favorable plea bargain is not ineffective assistance of counsel "where there is no evidence such a plea deal would have been offered." *Burger v. Kemp*, 483 U.S. 776, 785-86 (1987). Here, Petitioner simply has not shown that a more favorable deal would have been offered by the government, and Petitioner's bald assertion that he was entitled to a better plea bargain is not a basis upon which habeas relief can be granted. *See Anthoulis v. New York*, 586 F. App'x 790, 792 (2d Cir. 2014) (finding no prejudice where petitioner's theory that he could have gotten a more favorable plea agreement was "based on mere speculation about how plea negotiations would have proceeded"); *see also Millington v. Lee*, No. 11-cv-499 (LGS) (DCF), 2015 WL 1402133, at *13-15 (S.D.N.Y. Mar. 26, 2015) (noting that "nothing but speculation" is insufficient to show prejudice). Accordingly, the

Court finds that Plaintiff's conclusory assertion that he could have gotten a better plea bargain is insufficient to show prejudice under *Strickland*.

Finally, Petitioner's claim that counsel was ineffective at the sentencing conference for failing to seek a downward departure based on his diminished capacity must also fail.  The record indicates that Petitioner's counsel made the Court abundantly aware of Petitioner's sympathetic qualities and encouraged the Court to impose no more than the mandatory ten-year sentence required by law.  In a detailed sentencing memorandum submitted to the Court, totaling eighty-seven pages, counsel discussed Petitioner's difficulty growing up without a father, his learning disabilities and status as a "special needs child" in school, his trouble coping with his grandmother's illness and death, and the overwhelming commitment by Petitioner's family to supporting him in the future.  (Doc. No. 19 at 1-10.)  Moved by these arguments, the Court sentenced Petitioner to the mandatory minimum sentence of ten years' imprisonment.  As noted above, courts have limited ability to sentence below a statutory mandatory minimum, *see* 18 U.S.C.A. § 3553(e), and in this case the Court could not have deviated from the mandatory minimum unless the government filed a U.S.S.G. § 5K1.1 motion indicating that Petitioner substantially assisted in the investigation or prosecution of another person, which Petitioner does not – and cannot – allege was the case.  Put simply, the Court could not have sentenced Petitioner below the ten-year mandatory minimum on the grounds of his diminished capacity since no 5K1.1 motion was filed in this case.  Since counsel's conduct neither fell below an objective standard of reasonableness, *see United States v. Arena,* 180 F.3d 380, 396 (2d Cir. 1999) (noting that "[f]ailure to make a meritless argument does not amount to ineffective assistance"), nor prejudiced Petitioner in any way, *see United States v. Luciano*, 158 F.3d 655, 661 (2d Cir. 1998) ("Because the district court lacked discretion to sentence [defendant] to any lesser period of jail time, the

11

outcome of the proceeding in which the constitutionally deficient representation occurred could not possibly have been any different."); *Jimenez v. United States*, 262 F. Supp. 2d 85, 90 (S.D.N.Y. 2003) (stating that petitioner "cannot establish prejudice" where court imposed mandatory minimum sentence), Petitioner's claim that counsel was ineffective for failing to seek a downward departure also fails.

## IV. CONCLUSION

In sum, the Court finds that Petitioner has failed to demonstrate that his counsel was ineffective. Rather, the record indicates that Petitioner's counsel was a zealous and able advocate who obtained a very favorable result for his client. Accordingly, IT IS HEREBY ORDERED THAT the Petition is denied. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:      June 16, 2016
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE